# UNITED STATES DISTRICT COURT
### District of Kansas
(Kansas City Docket)

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                      **CASE NO.** 2:25-CR-20088-HLT/TJJ
                                          **FILED UNDER SEAL**

CANYON ANTHONY AMARYS,

        Defendant.

# INDICTMENT

**THE GRAND JURY CHARGES**:

At all times material to this Indictment:

### Overview

1.     In or about 2024, the Defendant, CANYON ANTHONY AMARYS ("AMARYS"), while affiliated with the Kansas National Guard, contacted one or more components of the government of the Russian Federation ("Russia"), or persons affiliated therewith, intending to provide services covertly to the Russian government. Thereafter, AMARYS was introduced to law enforcement undercover employees ("UCE") who portrayed themselves to AMARYS as agents of a Russian intelligence service.

1

2.    In or about February 2025, in discussions with a UCE, AMARYS agreed to travel for an in-person meeting in which he believed he would further discuss, in a secure setting, the services he would be providing to the Russian government.

3.    On or about February 27, 2025, AMARYS traveled to Kansas from New Mexico and met, in a hotel room in Overland Park, Kansas, with a UCE whom he believed to be an agent of a Russian intelligence service. There, AMARYS signed a one-page agreement in which he purported to confirm his covert relationship with the Russian intelligence service. In addition, AMARYS agreed to enter Fort Riley, Kansas at a later date and to photograph a military installation therein, believing that such actions would benefit the Russian government.

4.    During the same meeting, the UCE gave AMARYS thousands of dollars in cash for AMARYS to use to purchase a controlled item and export it to Russia for the benefit of the Russian military. At all times relevant to the Indictment, that item — a Garmin GTR-205 radio for helicopters — was subject to U.S. export controls, and its shipment to the territory of Russia and to a Russian military end-user was restricted under laws and regulations of the United States, as discussed further below.

5.    In or about March 2025, AMARYS purchased the aforementioned helicopter radio and, in coordination with a UCE, packaged it for shipment and mailed it to a U.S. Postal Service (USPS) facility in Junction City, Kansas. AMARYS had previously informed a UCE that he had researched regulations concerning the shipment of such items, and AMARYS was aware that the export of the radio to Russia, as planned with the UCE, would be illegal.

6.      On or about March 20, 2025, as agreed with a UCE, AMARYS again traveled to Kansas from New Mexico and, while accompanied by a UCE, retrieved the package from the USPS facility and shipped the helicopter radio to a purported mailing address in Romania.  Immediately before this shipment, in a recorded discussion with a UCE, AMARYS confirmed his understanding that the radio, after being shipped to the purported address in Romania, was to be illegally diverted to Russia.

7.      After leaving the USPS facility, AMARYS traveled to Fort Riley and, while being recorded by the UCE, photographed an installation on Fort Riley that he understood to contain sensitive military technology.  AMARYS sent the UCE this photo later the same day, believing his actions were for the benefit of the Russian government.

8.      Law enforcement recovered the package that AMARYS had sought to mail from Junction City, Kansas and, after obtaining a warrant to search its contents, recovered (1) a customs declaration form that AMARYS had signed, using his true name; and (2) the Garmin GTR-205 radio that AMARYS had intended to illegally send to Russia, for the benefit of a Russian military end-user.

## Legal Background

*The Export Administration Regulations (EAR) and Export Control Reform Act (ECRA)*

9.      The Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Sections 730-774, were promulgated by the United States Department of Commerce, Bureau of Industry and Security ("BIS") to regulate the export of goods, technology, and software from the United States.

10.    Through the EAR, BIS reviewed and controlled the export and reexport of certain items from the United States to foreign countries.  In particular, BIS placed restrictions on the export and reexport of items that it determined could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States.  Such restrictions included, among other things, a requirement to obtain a license to export an item subject to the EAR from the United States to a foreign country, or to reexport such an item from one foreign country to another.  Under the EAR, such restrictions depended on several factors, including the technical characteristics of the item, the destination country, the end user, and the end use of the item.

11.    The EAR defined the term "subject to the EAR" to generally include (1) all items in the United States, and (2) all U.S.-origin items wherever located.

12.    The EAR defined the term "export" to include an actual shipment or transmission out of the United States, including the sending or taking of an item out of the United States, in any manner.  The EAR further provided that the export of an item that will transit through a country or countries to a destination identified in the EAR (for example, the territory of Russia) is deemed to be an export to that destination.

13.    The EAR defined the term "reexport" to include an actual shipment or transmission of an item subject to the EAR from one foreign country to another foreign country, including the sending or taking of an item to or from such countries in any manner.  The EAR's definition of the term "reexport" also provided that the reexport of an item subject to the EAR that will transit through a country or countries to a destination

4

identified in the EAR (for example, the territory of Russia) is deemed to be a reexport to that destination.

14.     The Export Control Reform Act ("ECRA"), in Title 50, United States Code, Section 4819(a), provided that no person may engage in any conduct prohibited by or contrary to, or refrain from engaging in any conduct required by ECRA, the EAR, or any order, license, or authorization issued thereunder.  In addition, Title 50, United States Code, Section 4819(a) provided that no person may engage in any transaction or take any other action with intent to evade the provisions of ECRA, the EAR, or any order, license, or authorization issued thereunder.

15.     The EAR, in Title 15, Code of Federal Regulations, Section 764.2, similarly provided that (1) no person may engage in any transaction or take any other action prohibited by or contrary to, or refrain from engaging in any transaction or taking any other action required by ECRA, the EAR, or any order, license, or authorization issued thereunder; and (2) no person may engage in any transaction or take any other action with intent to evade the provisions of ECRA, the EAR, or any order, license, or authorization issued thereunder.

*Commerce Control List and Russian Military End-User Restrictions*

16.     The most sensitive items subject to EAR controls were identified on the Commerce Control List ("CCL") set forth in Title 15, Code of Federal Regulations, part 774, Supplement Number 1.  Items listed on the CCL were categorized by an Export Control Classification Number ("ECCN"), each of which was subject to export control requirements depending on destination, end use, and end user of the item.

17.     In response to Russia's invasion of Ukraine in February 2022, BIS imposed new license requirements on the export and reexport of items from the United States to the territory of Russia.  Effective on or about February 24, 2022, any item classified under any ECCN in Categories 3 through 9 of the CCL required a license to be exported or reexported to Russia.  *See* Volume 87, Federal Register, Page 12226 (published Mar. 3, 2022).  Effective on or about April 8, 2022, BIS expanded the license requirement for exports or reexports to Russia to cover all items on the CCL.  *See* Volume 87, Federal Register, Page 22130 (published Apr. 14, 2022).  These license requirements were adopted in the EAR under Title 15, Code of Federal Regulations, Section 746.8(a)(1), which, at all times relevant to this Indictment, generally provided that a license from BIS was required to export or reexport to Russia any item subject to the EAR that was specified in any ECCN on the CCL.

18.     In addition to the aforementioned license requirement for the export or reexport of CCL-controlled items to Russia, at all times material to this Indictment, Title 15, Code of Federal Regulations, 744.21(a)(2) generally provided that it was unlawful for a person to export or reexport **any** item subject to the EAR without a license from BIS if, at the time of the export or reexport, the person had knowledge that the item was intended, entirely or in part, for a Russian "military end user" as defined in the EAR.  The EAR defined a "military end user" to include, as relevant here, Russia's national armed services, as well as any person or entity whose actions or functions are intended to support "military end uses" as defined in the EAR.

19.     At all times material to this Indictment, the Garmin GTR-205 radio that

AMARYS mailed to Junction City, Kansas and sought to export abroad for the benefit of the Russian military was (1) subject to the EAR and (2) controlled on the CCL under ECCN 7A994.  Under the laws and regulations of the United States, including the EAR provisions described above, such an item could not lawfully be exported or reexported to the territory of Russia, or to a Russian military end-user, without a license from BIS.

20.    At no time did AMARYS seek or obtain any license from BIS concerning the export or reexport of the controlled item described above.

## COUNT 1

### EXPORT CONTROL REFORM ACT
### [50 U.S.C. § 4819]

21.    The factual allegations in paragraphs 1 to 20 are hereby realleged and incorporated as if set forth in this paragraph.

22.    Between on or about March 3, 2025, and on or about March 20, 2025, in the District of Kansas and elsewhere, the defendant,

**CANYON ANTHONY AMARYS**,

willfully attempted to export an item, to wit, a Garmin GTR-205 radio, from the United States to the territory of Russia, and for use by a Russian military end-user, without first having obtained the required authorization and license from the U.S. Department of Commerce, in violation of Title 50, United States Code, Section 4819; and Title 15, Code of Federal Regulations, Section 764.2.

## FORFEITURE NOTICE

23.     The allegations contained in paragraphs 1 to 22 and Count 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 50, United States Code, Section 4819.

24.     Upon conviction of the offense set forth in Count 1 of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 50, United States Code, Section 4819, any property: used or intended to be used in any manner to commit or facilitate the offense; constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the violation; or constituting an item or technology that is exported or intended to be exported in violation of the offense.  Such property includes the Garmin GTR-205 radio.

A TRUE BILL.

 October 22, 2025_____               s/Foreperson_____
DATE                                   FOREPERSON OF THE GRAND JURY

RYAN A. KRIEGSHAUSER
UNITED STATES ATTORNEY

By: /s/ Scott C. Rask_____
SCOTT C. RASK
Assistant United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas  66101
Ph: (913) 551-6730

Fax: (913) 551-6541
Email: scott.rask@usdoj.gov
Ks. S. Ct. No. 15643

By: */s/ David J. Ryan*
DAVID J. RYAN
Trial Attorney
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Ph: (202) 353-7842
Fax: (202) 532-4251
Email: david.ryan2@usdoj.gov
District of Columbia Bar No. 888325195

IT IS REQUESTED THAT THE TRIAL BE HELD IN KANSAS CITY, KANSAS

## PENALTIES

## Count 1, Export Control Reform Act

- Punishable by a term of imprisonment of not more than twenty years. 50 U.S.C. § 4819.

- A term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2).

- A fine not to exceed $1,000,000. 50 U.S.C. § 4819.

- A mandatory special assessment of $100. 18 U.S.C. § 3013(a)(2)(A).

- Forfeiture. 50 U.S.C. § 4819.